FJN:CWE/LM
F. #2025R00201

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
\* JUNE 27, 2025 \*
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA

- against -

JOSÉ ADOLFO MACÍAS
VILLAMAR,
    also known as "Fito,"
DARÍO JAVIER PEÑAFIEL NIETO,
    also known as "Topo," and
FRANCISCO MANUEL BERMUDEZ
CAGUA,
    also known as "Churron,"

               Defendants.

------------------------------X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 25-114 (S-1) (FB)
(T. 18, U.S.C., §§ 554(a),
924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d)(1), 932(b)(1),
932(b)(2), 932(c)(2), 934(a)(1),
981(a)(1)(C), 3238, 2 and 3551 et seq.;
T. 21, U.S.C., §§ 853(a), 853(p),
959(a), 959(d), 960(a)(3),
960(b)(1)(B)(ii), 963 and 970; T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

I.      The Defendants

        1.     From at least 2016 until June 2025, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," and FRANCISCO MANUEL BERMUDEZ CAGUA, also known as "Churron," were leaders of Los Choneros, an international drug trafficking and transnational criminal organization.

        2.     From at least 2020 until June 2025, the defendant JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," was the principal leader of the Los Choneros organization.

3. From at least 2020 until June 2025, the defendants DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," and FRANCISCO MANUEL BERMUDEZ CAGUA, also known as "Churron," were top lieutenants within the leadership structure of the Los Choneros organization.

II. The Drug Trafficking Conspiracy

4. Los Choneros was one of Ecuador's most violent transnational criminal organizations and controlled key cocaine trafficking routes through Ecuador. Los Choneros operated a vast network responsible for the shipment and distribution of multi-ton quantities of cocaine from South America through Central America and Mexico to the United States and elsewhere. The vast majority of drugs trafficked by Los Choneros were imported into the United States, where the drugs were consumed. Los Choneros used violence, extortion and corruption as means and methods of achieving its goals.

5. Los Choneros worked with Mexican cartels, including the Sinaloa cartel, to transport cocaine from Colombia through Ecuador and into Mexico. This partnership was extremely profitable for Los Choneros and enabled the organization to grow in terms of membership, notoriety and wealth.

6. The leaders of Los Choneros, including the defendant JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," employed members who carried out numerous acts of violence. The leaders of Los Choneros directed and ordered these acts of violence to further the goals of the organization.

III. The Trafficking of Firearms Conspiracy

7. In furtherance of their drug trafficking operation, Los Choneros and their confederates relied on "sicarios," or hitmen, as well as corruption and bribe payments, to ensure

protection and loyalty to Los Choneros. Los Choneros' "sicarios" comprised a security apparatus built to commit acts of violence in order to protect Los Choneros' operation, its leaders, territory, trafficking routes and money. These "sicarios" regularly used military-grade weapons, like machine guns, AK-47s and grenades, to perpetrate violence, including murder, torture, and kidnapping. To further the goals of the organization, Los Choneros committed violent acts towards law enforcement, Ecuadorian politicians, attorneys and prosecutors and civilians. For example, in January 2024, armed with firearms, grenades and dynamite, members of Los Choneros raided an Ecuadorian television studio during a live broadcast and held numerous journalists hostage.

8. Los Choneros obtained many of these firearms and weapons by illegally trafficking and exporting them from the United States. Specifically, the acts of violence engaged in by Los Choneros were made possible because Los Choneros, including the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," and DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," employed individuals who purchased firearms, firearms components and ammunition on their behalf in the United States and then illegally smuggled them to Ecuador.

## COUNT ONE
(International Cocaine Distribution Conspiracy)

9. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

10. In or about and between 2016 and June 2025, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," and FRANCISCO MANUEL BERMUDEZ

CAGUA, also known as "Churron," together with others, did knowingly and intentionally conspire to distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 959(a) and 960(a)(3). The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was five kilograms or more of a substance containing cocaine.

(Title 21, United States Code, Sections 963, 959(d) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3238 and 3551 et seq.)

### COUNT TWO
(International Cocaine Distribution – Approximately 1,100 Kilograms of Cocaine)

11. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

12. In or about November 2024, within the extraterritorial jurisdiction of the United States, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," and DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3238, 2 and 3551 et seq.)

## COUNT THREE
(International Cocaine Distribution –
Approximately 1,800 Kilograms of Cocaine)

13. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

14. On or about January 30, 2025, within the extraterritorial jurisdiction of the United States, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," and DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3238, 2 and 3551 et seq.)

## COUNT FOUR
(International Cocaine Distribution –
Approximately 800 Kilograms of Cocaine)

15. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

16. On or about February 19, 2025, within the extraterritorial jurisdiction of the United States, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," and FRANCISCO MANUEL BERMUDEZ CAGUA, also known as "Churron," together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii); Title 18, United States Code, Sections 3238, 2 and 3551 et seq.)

## COUNT FIVE
(Use of Firearms in Furtherance of Drug Trafficking)

17. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between 2016 and June 2025, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," and FRANCISCO MANUEL BERMUDEZ CAGUA, also known as "Churron," together with others, did knowingly and intentionally use and carry one or more firearms, during and in relation to one of more drug trafficking crimes, to wit: the crimes charged in Counts One through Four, and did knowingly and intentionally possess such firearms in furtherance of said drug trafficking crimes, one or more of which firearms was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2, 3238 and 3551 et seq.)

## COUNT SIX
(Smuggling Goods from the United States)

19. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

6

20. In or about and between June 2022 and March 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," and DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," together with others, did knowingly and fraudulently export and send from the United States, and attempt to export and send from the United States, merchandise, articles and objects, to wit: firearms, firearm components and ammunition, contrary to United States laws and regulations, to wit: Title 50, United States Code, Sections 4801 et seq. and Title 15, Code of Federal Regulations, Parts 730-74, and did fraudulently and knowingly receive, conceal, buy and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554(a), 2 and 3551 et seq.)

## COUNT SEVEN
(Straw Purchasing of Firearms Conspiracy)

21. The allegations contained in paragraphs one through eight are realleged and incorporated as if fully set forth in this paragraph.

22. In or about and between June 2022 and February 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSÉ ADOLFO MACÍAS VILLAMAR, also known as "Fito," and DARÍO JAVIER PEÑAFIEL NIETO, also known as "Topo," together with others, did knowingly and intentionally conspire to purchase one or more firearms in and otherwise affecting interstate and foreign commerce for, on behalf of, and at the request and demand of one or more other persons, knowing and having reasonable cause to believe that such other persons intended to use, carry,

possess and sell and otherwise dispose of the firearms in furtherance of a felony and a drug trafficking crime.

(Title 18, United States Code, Sections 932(b)(1), 932(b)(2), 932(c)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH FOUR

23. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Four, the government will seek forfeiture in accordance with Title 21, United States Code, Sections 853(a) and 970, which require any person convicted of such offenses to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offenses; and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses.

24. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

  (a) cannot be located upon the exercise of due diligence;

  (b) has been transferred or sold to, or deposited with, a third party;

  (c) has been placed beyond the jurisdiction of the court;

  (d) has been substantially diminished in value; or

  (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a), 853(p) and 970)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT FIVE

25. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 922 or Section 924.

26. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## <u>AS TO COUNT SIX</u>

27. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SEVEN

29. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Seven, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 924(d)(1) and 934(a)(1), and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense; (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and (c) any firearm or ammunition involved in or used in any violation of any criminal law of the United States.

30. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 934(a)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
_____
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK