

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:CWE/LM/DIB
F. #2025R00201

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 20, 2025

By Email and ECF

The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. José Adolfo Macías Villamar et. al.
      Criminal Docket No. 25-114 (FB)

Dear Judge Block:

  The government respectfully submits this memorandum in support of its application for a permanent order of detention for the defendant José Adolfo Macías Villamar, also known as "Fito," the leader of Los Choneros, a violent firearms and drug trafficking organization based in Ecuador. Ecuadorian authorities arrested Macías Villamar—an Ecuadorian national—on June 25, 2025. He was extradited from Ecuador to the United States on July 20, 2025 and is scheduled to appear before the Court tomorrow for an arraignment on the Superseding Indictment in this case. For the reasons set forth below, and at his arraignment, the Court should enter a permanent order of detention, as no condition or combination of conditions can assure the safety of the community or assure Macías Villamar's appearance at trial.

I. <u>Macías Villamar's Leadership of Los Choneros</u>[1]

Until his arrest on June 25, 2025, Macías Villamar was the highest-ranking leader of Los Choneros, which is Ecuador's most violent and powerful transnational criminal organization. Los Choneros controls extensive networks in Ecuador to facilitate drug and firearms trafficking, carry out killings and kidnappings, and engage in other criminal activity. At Macías Villamar's direction, Los Choneros used this vast criminal network to ship multi-ton quantities of cocaine from South America through Central American and Mexico for ultimate distribution in the United States and elsewhere.

Los Choneros, at the direction of Macías Villamar and other co-conspirators, have been involved in drug trafficking in Ecuador since the 1990s and are a key driver of the escalating violence that has plagued Ecuador since 2020. Los Choneros worked with Mexican cartels, including the Sinaloa Cartel, to transport cocaine from suppliers in Colombia through Ecuador onto Mexico for distribution in the United States. This partnership was extremely profitable for Los Choneros and enabled the organization to grow in terms of membership, notoriety, and wealth. In furtherance of their drug trafficking operations, Los Choneros and their confederates relied on "sicarios," or hitmen, as well as corruption and bribe payments, to ensure protection and loyalty to Los Choneros. Los Choneros' "sicarios" comprised a security apparatus built to commit acts of violence to protect Los Choneros' operations, its leaders, territory, trafficking routes, and money. These "sicarios" regularly used military-grade weapons, like machine guns, AK-47s, and grenades to perpetrate violence, including kidnapping, torture, and murder. To further the goals of the organization, Los Choneros committed violent acts towards Ecuadorian law enforcement, politicians, attorneys, prosecutors, and civilians. Ecuador has classified Los Choneros as a terrorist organization.

Macías Villamar has no legal status in the United States. Furthermore, on February 7, 2024, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") sanctioned Macías Villamar and Los Choneros "for having engaged in, or attempted to engage in, activities or transactions that materially contributed to, or pose a significant risk of materially contributing to, the international proliferation of illicit drugs or their means of production." OFAC's action followed a steep rise in violence in Ecuador attributable to the actions of Macías Villamar and Los Choneros.

---

[1] As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a Permanent Order of Detention. See <u>United States v. LaFontaine</u>, 210 F.3d 125, 130–31 (2d Cir. 2000); <u>United States v. Ferranti</u>, 66 F. 3d 540, 542 (2d Cir. 1995). This proffer seeks only to articulate facts sufficient to justify detention; thus, it is not a complete statement of all the evidence of which the government is aware or which it will seek to introduce at trial.

 II. <u>Macías Villamar's Prison Escapes and His Leadership of the Los Choneros from Prison</u>

  In 2011, Macías Villamar was arrested in Ecuador for drug trafficking and organized crime charges and was sentenced to 34 years in prison. In or around February 2013, Macías Villamar escaped along with other members of Los Choneros. To carry out the escape, Macías Villamar and others immobilized fourteen prison guards before fleeing from the prison facility. Macías Villamar was recaptured months later.

  During his second imprisonment in Ecuador, Macías Villamar continued to direct the criminal activities of Los Choneros by, among other things, giving orders to associates and coordinating the trafficking of dangerous drugs and weapons. While in prison, Macías Villamar enjoyed access to contraband cell phones and the internet, which enabled him to continue to direct the activities of Los Choneros and publish external communications and threats on Los Choneros' behalf. In January 2024, Macías Villamar again escaped from prison—just two days ahead of his planned move to a maximum-security facility—and continued to lead Los Choneros while he simultaneously evaded Ecuadorian security forces for nearly 18 months. Macías Villamar is still facing numerous charges (including murder, robbery, weapons possession, and drug trafficking) in that country.

 III. <u>Recapture and Extradition of the Defendant</u>

  On June 25, 2025, following an almost 18-month manhunt, Ecuadorian Special Forces recaptured Macías Villamar. He was found hiding inside a luxury villa compound in the port city of Manta, Ecuador—a longtime Los Choneros stronghold. The villa was equipped with, among other luxuries, a pool, a gym, appliances, and a game room. Special Forces recaptured and arrested Macías Villamar after finding him in a bunker that had been custom built and hidden below the villa. The bunker had a sliding trap door, which was built to appear as part of the regular floor, and which led to a staircase to the underground hideout. The bunker was equipped with, among other things, a bed, refrigerator, and air conditioning.

  On June 27, 2025, a grand jury sitting in the Eastern District of New York returned a seven-count Superseding Indictment against Macías Villamar and two co-conspirators. Count One charges Macías Villamar with participating in an international cocaine distribution conspiracy, in violation of Title 21, United States Code, Sections 963, 960(b)(1)(B)(ii), and 959(d). Counts Two through Four charge Macías Villamar with participating in the international distribution of cocaine, knowing and intending that the narcotics would be illegally imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 959(d), 960(a)(3) and 960(b)(1)(B)(ii). Each of Counts One through Four carries a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment. Count Five charges Macías Villamar with the use of a firearm in violation of Title 18, United States Code, Section 924(c), in connection with the aforementioned offenses. Count Five carries a mandatory minimum term of imprisonment of 10 years and a maximum term of life imprisonment, to be served consecutively with any other sentence of imprisonment.

Lastly, Counts Six and Seven charge Macías Villamar with smuggling offenses—related to his smuggling firearms from the United States to Ecuador, in violation of Title 18, United States Code, Sections 371 and 554 and with participating in a straw purchasing of firearms conspiracy, in violation of Title 18, United States Code, Sections 932(b)(1), 932(b)(2) and 932(c)(2).  Counts Six and Seven carry maximum terms of imprisonment of 10 and 25 years, respectively.

## ARGUMENT

IV.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).   A finding of risk of flight need only be based on a preponderance of the evidence.  See United States v. Kwok, No. 23-CR-118, 2024 WL 54170, at *1 (S.D.N.Y. Jan. 4, 2024) (risk of obstruction); United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (risk of flight).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A presumption of dangerousness and risk of flight arises when, as here, a defendant is charged with an offense under the Controlled Substances Act or the Controlled Substances Import and Export Act that carries a maximum term of imprisonment of 10 years or more and the Court finds probable cause to believe that the defendant committed such offense.  18 U.S.C. § 3142(e)(3)(A).

Given this applicable presumption, the Court must initially assume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3124(e)(3).  The defendant may rebut this presumption by coming "forward with evidence that he does not pose a danger to the community or a risk of flight."  United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If the defendant satisfies his burden of production, the government retains the burden of persuasion to demonstrate by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant presents a risk of flight.  See 18 U.S.C. § 3142(f); Mercedes, 254 F.3d at 436; United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'"  United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).  Indeed—and significantly—danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking."  United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985).  In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee," United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993), as does the possibility of a severe sentence, see Jackson, 823 F.2d at 7; United States v. Martir, 782

4

F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was flight risk because her knowledge of seriousness of charges against her gave her strong incentive to abscond to Mexico).

Courts consider several factors in making the determination of whether pretrial detention is appropriate: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, and past conduct; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release.  See 18 U.S.C. § 3142(g).  Even where the defendant has met his burden of production to rebut the statutory presumption in favor of detention, the presumption remains a factor for the Court to consider.  Mercedes, 254 F.3d at 436.

The facts and circumstances of this case compel Macías Villamar's detention, as all four factors set forth in the Bail Reform Act show that he poses a danger to the community and a risk of flight.

V.      Macías Villamar Is a Danger to the Community

Macías Villamar poses an extraordinary danger to the community.  The crimes with which Macías Villamar is charged—participating in an international narcotics importation and distribution conspiracy and using firearms in furtherance of that conspiracy—are extremely serious.

Macías Villamar personally led a prolific drug and gun trafficking organization.  As its top leader and founder, Macías Villamar oversaw the trafficking of many thousands of kilograms of cocaine through Ecuador on its way to the United States.  To protect his operation, Macías Villamar used violence freely.  In addition to ordering beatings and executions of civilians, Macías Villamar also directed his associates to commit violence against members of law enforcement.  For example, the government has evidence that Macías Villamar bribed Ecuadorian judges and threatened prosecutors in connection with prosecutions against his family and members of Los Choneros, including in connection with a murder prosecution of an associate.

Additionally, Macías Villamar has a history of committing crimes even from prison.  While in Ecuadorian custody, Macías Villamar operated as the unofficial leader of the prison where he was held.  Ecuadorian law enforcement officers found images exalting the defendant strewn throughout the prison, as well as numerous weapons and cash.  Furthermore, Macías Villamar and his associates bribed numerous prison and public officials to maintain his power and status within the Ecuadorian prison.  There are videos of parties held in the prison, which included fireworks and mariachi band concerts.  Macías Villamar also released videos from prison mocking the Ecuadorian government, including a music video featuring Macías Villamar and his daughter, which appears to have been partially recorded inside the prison and which glorifies his criminal activities.  While in prison Macías Villamar also ordered the

5

execution of a senior Los Choneros member and his brother after Macías Villamar learned they had been selling guns without Macías Villamar's consent.

Even after his second escape from prison in 2024, Macías Villamar continued to lead Los Choneros, all while going to great lengths to avoid detection and recapture. Indeed, shortly after his 2024 prison escape, the President of Ecuador declared a 60-day state of emergency due to internal armed conflict and ordered the military to take over the streets to neutralize violence perpetrated by Los Choneros and other Ecuadorian gangs. That is, after Macías Villamar's escape, Los Choneros directed extreme acts of violence that terrorized Ecuador, including prison attacks, gang attacks, kidnappings, and bombings across the country. As such, the defendant would pose a severe danger to the community if released.

Similarly, detention is warranted to prevent Macías Villamar from tampering with witnesses and evidence and/or directing his associates to do the same. Macías Villamar retains immense stature within Los Choneros and has the means and incentive to obstruct justice, including through violence, such as retaliating against those individuals he knows to be or believes are government witnesses, as well as their families. Macías Villamar's two prior escapes from prison also demonstrate that he lacks respect for the rule of law and the integrity of judicial proceedings.

Because no combination of release conditions can adequately protect the community from Macías Villamar, he should be ordered detained pending trial.

VII. Macías Villamar Poses a Significant Risk of Flight

Detention is likewise necessary here given that Macías Villamar cannot overcome the presumption that he poses a significant risk of flight.

Macías Villamar escaped from prison twice and remained a fugitive most recently for nearly 18 months. Put simply, Macías Villamar stands ready to flee to avoid prosecution. As a fugitive, Macías Villamar maintained contact with co-conspirators using third-party's phones and arranging for meetings through intermediaries at remote locations. Should Macías Villamar be released from custody, he could seek to leverage his connections to high-level Los Choneros or Sinaloa Cartel members in Ecuador and Mexico to assist him in fleeing from U.S. law enforcement. See United States v. Bruno, 89 F. Supp. 3d 425, 432 (E.D.N.Y. 2015) (observing, in case involving both serious flight risk and danger to community, that detention is appropriate where defendant's "alleged ties to a large criminal syndicate indicate that he has strong connections to people who have the resources to, ability to, and interest in helping him flee the jurisdiction."). In addition, Macías Villamar appears to have extensive undisclosed wealth from his drug trafficking activities, and the ability to obtain additional revenue from Los Choneros' ongoing drug trafficking activities, all of which would enable him to orchestrate his flight from justice and sustain himself in hiding, as he previously did on two occasions.

Additionally, if convicted of participating in an international cocaine distribution conspiracy, as charged in Count One, international cocaine distribution, as charged in Counts

Two through Four, and discharging a firearm in violation of Title 18, United States Code, Section 924(c), as charged in Count Five, Macías Villamar faces a mandatory minimum sentence of imprisonment of twenty years and a maximum sentence of life on each count. Given the significant jail time Macías Villamar faces upon conviction, he has a strong incentive to flee the jurisdiction. See Jackson, 823 F.2d at 7 (prospect of severe sentence creates incentive to flee); Martir, 782 F.2d at 1147 (charges with significant maximum terms created potent incentive to flee); Cisneros, 328 F.3d at 618 (seriousness of charges gave defendant strong incentive to abscond). Furthermore, even if Macías Villamar were to prevail in the instant case, he still faces charges in Ecuador. This fact provides Macías Villamar with an even greater incentive to flee.

Finally, Macías Villamar was admitted to the United States for the sole purpose of facing prosecution. He has no legal status in this country nor personal ties to the United States. Given his absence of any connection to the United States (aside from his drug and gun trafficking activities) and his extensive ties to Ecuador and other high-level criminal organizations in Colombia and Mexico, Macías Villamar constitutes a significant risk of flight.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order Macías Villamar to be detained permanently pending trial, as there is no condition or combination of conditions that could assure the safety of the community or assure Macías Villamar's appearance at trial.

    Respectfully submitted,

    JOSEPH NOCELLA, JR.
    United States Attorney

By:    /s/ David I. Berman
    Chand Edwards-Balfour
    Lorena Michelen
    David I. Berman
    Assistant U.S. Attorneys
    (718) 254-7000